## REPUBLICAN PUB. CO. v. AMERICAN NEWSPAPER GUILD et al.

### No. 4383.

United States Court of Appeals
First Circuit.

March 4, 1949.

---

944

Arthur T. Garvey, of Springfield, Mass. (Samuel Fein, of Springfield, Mass., on the brief), for appellant.

Sidney S. Grant, of Boston, Mass. (Albert L. Goldman and Grant & Angoff, all of Boston, Mass., on the brief), for appellee.

Before MAGRUDER, Chief Judge, WOODBURY, Circuit Judge, and CONNOR, District Judge.

PER CURIAM.

Two complaints were filed on March 6, 1946, in the court below by numerous employees of the Republican Publishing Company seeking to recover from their employer unpaid overtime compensation, liquidated damages, attorneys' fees and costs, pursuant to § 16(b) of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. § 216(b). The defendant—appellant herein—is the publisher of several newspapers in Springfield, Massachusetts. The complaints were consolidated in the district court and referred to a master. The master's report, one of exceptional thoroughness and clarity, was in all respects confirmed by the district judge, who filed only a brief memorandum. Judgments were entered for plaintiffs on June 22, 1948, in accordance with the master's report. Republican Publishing Company appealed from these judgments, and this court ordered that the two appeals be docketed as a single case upon a consolidated transcript of record.

The district judge pointed out that by agreement of the parties the testimony had not been stenographically reported. "Therefore", he said, "I am largely confined to considering whether the report is internally consistent and whether there are errors of law. It is not open to me to determine whether the evidence supports the findings." On appeal, the scope of review in this court is similarly restricted. We have examined the master's report, and have satisfied ourselves that his findings of fact fully support his conclusions of law respecting the points pressed by appellant on this appeal. In the proceedings below, reference was made to the Portal-to-Portal Act of 1947, 61 Stat. 84, 29 U.S. C.A. § 251 et seq. However, at the oral argument before us, appellant's counsel expressly disclaimed any reliance upon the provisions of this Act, and we have accordingly not taken it into consideration.

We think this appeal is lacking in substance. One point, relating to plaintiff Annette Doyle, is perhaps worthy of brief comment.

Miss Doyle was originally hired as a proofreader. In September, 1941, she was promoted to the editorial staff as a reporter, covering social agencies and general assignments. Later, in April, 1942, "she took over the labor and industry beat, and on February 22, 1944 was assigned the job of theater editor in addition to her other duties." Originally she worked a basic 45-hour week, and after October 15, 1945, she went on a six-day 40-hour week. During all this period she was paid a flat weekly salary, which was $20 at the start, and was gradually increased to a top of $50 per week beginning August 8, 1946. The master found: "There is no doubt from the testimony of the defendant that she was considered one of the ablest and most conscientious reporters on the staff and that she could always be depended on to finish her job."

The responsibility of Miss Doyle as theater editor extended to seeing that new moving pictures and plays were covered by someone, not necessarily by her. In computing her hours worked, for the purpose of determining the amount of overtime pay due under the statute, the master included, in addition to her basic regular workweek, the hours spent by her in the theaters, seeing the pictures or plays which were personally reviewed by her for the newspaper. Appellant objects to the inclusion of these extra hours in the computation of hours actually worked by Miss Doyle, because it was the policy of the paper not to pay for this work, well understood by Miss Doyle when she took the extra assignment of theater editor.

On this point the master made the following findings:

"With reference to this aspect of Miss Doyle's overtime claim it should be added that the defendant had never compensated

members of its staff for reviewing movies or legitimate stage productions. Indeed a specific proposal sometime during this period to pay $1 for each review was vetoed by the executive editor. Despite this policy the incidental benefits of free passes, parties, Christmas gifts from the theatres, etc., made the position of theatre editor so attractive that at least up until the war years there was active bidding for it among the staff. The evidence is strong that Miss Doyle's assignment to the job in 1944 was at her own request, although she was well aware of the practice of the paper with regard to compensation for it.

"* * * There is no doubt that the defendant considered the job as a plum to be handed out to deserving reporters rather than as an assignment to work. There is also no doubt that Miss Doyle was aware of this attitude. The defendant contends therefore that her assumption of the duties was a purely voluntary act and that there is no obligation on its part to pay her anything let alone time and a half. Section No. 203 of the Act defines 'to employ' as including to suffer or permit to work. Hence the crucial question is not whether the work was voluntary, but rather whether the plaintiff was in fact performing services for the benefit of the employer with the knowledge and approval of the employer. Under the circumstances here, to pose the question is to answer it. And a contract to pay nothing for work stands in no better light under the Act than a contract to pay below the minimum wage. I conclude that the time she spent in the role of critic is working time under the Act."

We think that the master ruled correctly in this matter. The theater editor could not very well write a review of a picture or play without seeing it; and therefore her attendance at the theater for this purpose must be deemed physical or mental exertion (whether burdensome or not) controlled or required by the employer, and "pursued necessarily and primarily for the benefit of the employer and his business." See Jewell Ridge Coal Corp. v. Local No. 6167, 1945, 325 U.S. 161, 164-165, 65 S.Ct. 1063, 1066, 89 L.Ed. 1534. Consequently, these hours must be included in the workweek, and compensated at the statutory rate, despite any custom or understanding to the contrary. Tennessee Coal, Iron & R. Co. v. Muscoda Local, 1944, 321 U.S. 590, 602, 64 S.Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014. See also Anderson v. Mt. Clemens Pottery Co., 1946, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515.

Walling v. Portland Terminal Co., 1947, 330 U.S. 148, 67 S.Ct. 639, 91 L.Ed. 809; and Rogers v. Schenkel, 2 Cir., 1947, 162 F.2d 596, are in no way contrary to our conclusion in the case at bar.

The Portland Terminal case involved the question whether certain "trainees" were "employees" of the railroad within the meaning of §§ 6 and 7 of the Fair Labor Standards Act, 29 U.S.C.A. §§ 206, 207, and the court held they were not. In the footnote we quote a portion of the Court's opinion.[1] In Rogers v. Schenkel, the plaintiff and defendant had been friends, and after the plaintiff had received a 4-F Selective Service classification he took a job as helper in defendant's plant so as to assist in

---

[1] 330 U.S. at page 152, 67 S.Ct. at page 641, 91 L.Ed. 809: "Section 3(g) of the Act defines 'employ' as including 'to suffer or permit to work' and § 3(e) defines 'employee' as 'any individual employed by an employer.' The definition 'suffer or permit to work' was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another. Otherwise, all students would be employees of the school or college they attended, and as such entitled to receive minimum wages. So also, such a construction would sweep under the Act each person who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit. But there is no indication from the legislation now before us that Congress intended to outlaw such relationships as these. The Act's purpose as to wages was to insure that every person whose employment contemplated compensation should not be compelled to sell his services for less than the prescribed minimum wage. The definitions of 'employ' and of 'employee' are broad enough to accomplish this. But, broad as they are, they cannot be interpreted so as to make a person whose work serves only his own interest an employee of another person who gives him aid and instruction."

some way in the war effort. He had independent means and intended to render his services without compensation. On several occasions when the defendant asked him to turn in a weekly report of time worked, the plaintiff stated that his services were voluntary and that he would not accept wages in any form. Plaintiff refused to be placed upon the defendant's payroll because he did not wish to be listed as an employee. Notwithstanding this, the plaintiff had a change of heart and eventually brought suit under the Fair Labor Standards Act for the statutory minimum wages and liquidated damages. He recovered judgment in the district court on the ground that he was an employee within the meaning of the Act, since the defendant had suffered or permitted him to work in defendant's business. The court of appeals reversed upon the authority of Walling v. Portland Terminal Co.

By way of contrast with the cases just cited, Annette Doyle was undoubtedly an employee of appellant "whose employment contemplated compensation".[2] Under § 7(a) of the Act, she was entitled to be compensated at one and one-half times her regular rate of pay for the hours worked in each workweek in excess of 40 hours. Miss Doyle's attendance at the theaters for the purpose stated fulfilled "all three of the essential elements of work" as set forth in the Tennessee Coal, Iron & R. Co. and Jewell Ridge cases, supra, and the time so spent must be included in the computation of hours worked. The statute overrides any custom or understanding to the contrary.

█ Section 16(b) of the Act provides that, in addition to the recovery of unpaid minimum wages or overtime compensation, the court in such action shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." The district court in the present case awarded a counsel fee of $3000 "not including any compensation for any future work on any appeal that may be taken." This court will allow to the appellees as a reasonable attorney's fee for the proceedings on appeal the sum of $400.

The judgment of the District Court is affirmed, with the addition of $400 for attorney's fee in this court.