PATRICK J. BOLAN ET AL., APPELLANTS, V. MICHAEL BOYLE ET AL., APPELLEES.

352 N.W.2d 586

Filed July 27, 1984.   No. 83-102.

Jerold V. Fennell and Jay L. Grytdahl of Robert E. O'Connor & Associates, for appellants.

Herbert M. Fitle, Omaha City Attorney, and Kent N. Whinnery, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Plaintiffs, Patrick J. Bolan and Marcellus Deats, bring this action on behalf of themselves and as a class action on behalf of certain current and former civilian employees of the defendant City of Omaha, a municipal corporation.

Plaintiffs' petition alleged that plaintiffs, and those similarly situated, were entitled to one-half hour of overtime per day pursuant to a proper interpretation of the collective bargaining agreement with defendant City from and after February 27, 1977. Defendants named were officials of the City of Omaha and the City, and will be collectively referred to herein as "City." The City, in its answer, generally denied the allegations in the petition and relied on the terms of the same collective bargaining agreement in seeking dismissal of the petition.

The issue of the City's liability under the contract was the only issue submitted to the trial court. Evidence was submitted on that issue, and the court, after trial, rendered judgment for the City on the plaintiffs' petition. Plaintiffs timely filed a motion for new trial and have appealed from the denial of that motion. For the reasons hereinafter set out we reverse and remand the cause for further proceedings.

The evidence showed that plaintiffs are civilian employees of the City and work for the police division in the criminalistics section, as a part of the public safety department. As described by Marcellus Deats, one of the plaintiffs, the jobs of plaintiffs are:

> Our section has the responsibility for—our main mission would be crime scene investigation. In other words, we go to a crime scene whether it be a burglary, homicide, whatever, to dust the latent fingerprints, photograph, collect, and preserve physical evidence; if warranted, making drawings of the crime scene. We also have in-house services which would include running the gas chromatograph, the intoxometer [sic] for suspected drunk drivers, mugging, fingerprinting and photographing persons booked in the detention area for certain crimes, the identification

of latent prints that have been picked up and in some instances we have specialties, in my particular case, it would be firearms and tool mark examination.

Plaintiffs are members of the Omaha city employees union, Local No. 251, American Federation of State, County and Municipal Employees, and were members from 1976 through 1982. In each of the years 1976 through 1982, the agreement between the union and the City contained an identical paragraph, to wit:

> Employees of the Public Safety Department shall receive a one-half ($\frac{1}{2}$) hour meal period without pay, and such meal period shall not be considered as time worked, *except for those employees who by the nature of their work are required to be on duty for eight (8) consecutive hours, in which case they shall receive a one-half ($\frac{1}{2}$) hour meal period with pay and such time shall be considered as time worked.*

(Emphasis supplied.)

Before February 27, 1977, and while the foregoing clause was in effect, plaintiffs worked an 8-hour shift and were paid for a full 8 hours of work even though they were permitted a $\frac{1}{2}$-hour lunch period during the shift. After February 27, 1977, plaintiffs were scheduled for $8\frac{1}{2}$-hour shifts, but were paid for 8 hours and provided a $\frac{1}{2}$-hour lunch period.

Testimony adduced by plaintiffs further indicated that the technicians are called to the scenes of various crimes, such as burglaries, homicides, and robberies, and that when they are called, they report to the scene at once. The manner of the taking of employees' meals during those shifts did not change after February 27, 1977. As testified to by plaintiff Deats, his practice was to carry a lunch 90 or 95 percent of the time and to "take my lunch hour when the time is available." Plaintiffs would inform the senior person on the shift when they were going to eat; and if they left the premises to get a sandwich, the plaintiffs would check out with their superiors and inform them of their destination. They would remain in touch with headquarters on those occasions by portable radio or by being available at the destination to which they had informed their superiors they were heading.

Plaintiffs testified that sometimes they were unable to take

any lunch period during their $8^{1}/_{2}$ hours of work and that at other times their lunch period was interrupted by calls for their services.

The City introduced six exhibits reflecting the daily activities of six City employees, including Deats, for 20 working days during the time from November 11 to December 8, 1979. These exhibits were completed by the employees at the time the City was doing a job analysis or job review. The daily worksheets were not kept for the purpose of determining whether lunch periods were taken or not taken, but for the City's personnel department in determining job skills, training needs, etc. However, such exhibits did contain information relevant to this dispute.

These exhibits disclose facts that are persuasive in determining this case. As stated, each of the six employees kept a record for 20 working days.

As to plaintiff Deats, whose work hours were 3:30 p.m. to 12 midnight, in those 20 days he was unable to take any lunch break on 3 days, and the time of taking his lunch breaks ranged from 6:30 p.m. to 10:30 p.m.

As to employee Beverly Mazur, whose work hours were also 3:30 p.m. to 12 midnight, on 2 days she took no lunch period; on 1 day her lunch was shortened when she was called out to check for fingerprints at the scene of a robbery; and the taking of her lunch period ranged from 5:25 p.m. to 10:05 p.m.

As to employee Micheal Stone, whose shift was 7:30 a.m. to 4 p.m., on 1 day he had no lunch period; on 1 day his lunch was curtailed to 10 minutes due to a call for his services at a death scene; on 2 other days his lunch period was shortened for unstated reasons; and the taking of his lunch period ranged from 11 a.m. to 1:45 p.m.

With regard to employee Donald Veys, whose shift was 7:30 a.m. to 4 p.m., he did not miss lunch entirely during the 20 days, but his lunch period was shortened on 6 days (including 1 day when he had 5 minutes for lunch at 11 a.m., interrupted by a call to a shooting, and 15 minutes at 12:25 p.m.) and interrupted on two other occasions—once for a line-up photo and once on a call to a burglary.

Another employee, Cleve Albaugh, whose shift was 7:30

a.m. to 4 p.m., missed no lunch periods, but took his meals at times ranging from 11 a.m. to 1:30 p.m.

The last of the six employees, Laura Beal, whose shift was 3:30 p.m. to midnight, missed her lunch period once; had her lunch time shortened on three occasions (once to 10 minutes) and took her meal beginning at times from 6:30 p.m. to 9:30 p.m.

The only conclusion that can be drawn from all the evidence is that plaintiffs' lunchtime belonged to the City. There was no set time at which plaintiffs could, as a matter of right, demand to sit down and enjoy one-half hour of privacy and not be subject to the employer's call. There were days, as demonstrated by the City's own evidence, when no lunch period was taken; and while those times were not regular, in the six instances presented, the lunchless days ranged from zero to three. Every employee as to whom evidence was submitted, except one, had lunch periods shortened due to duty calls. In that situation, as stated in *North v. City of Omaha*, 215 Neb. 107, 110, 337 N.W.2d 409, 411 (1983):

> Substantial authority exists for the proposition . . . that when an employer retains a hold on employees during lunchtime so that employees are not actually at liberty to leave, the lunchtime constitutes compensable time. *Glenn L. Martin Nebraska Co. v. Culkin*, 197 F.2d 981 (8th Cir. 1952); *F. W. Stock & Sons v. Thompson*, 194 F.2d 493 (6th Cir. 1952); *Thompson v. Iowa Beef Packers, Inc.*, 185 N.W.2d 738 (Iowa 1971).

These plaintiffs fell in the group defined in the City's contract, "except for those employees who by the nature of their work are required to be on duty for eight (8) consecutive hours, in which case they shall receive a one-half ($1/2$) hour meal period with pay and such time shall be considered as time worked."

The evidence is clear that plaintiffs are in the group "required to be on duty for eight (8) consecutive hours" and are on duty and working during their entire $8^1/2$-half hour shifts, and they are entitled to be compensated for the entire time they are at work.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.