LARRY LYNN BANKS, APPELLANT, V. MERCY VILLA CARE CENTER, APPELLEE.

407 N.W.2d 793

Filed June 26, 1987.    No. 85-817.

Peter C. Bataillon of Sodoro, Daly & Sodoro, for appellant.

Steven M. Lathrop of Lathrop & Lathrop, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

The then small claims department of the municipal court of the city of Omaha entered a judgment for back wages in the amount of $1,000 in favor of plaintiff, Larry Lynn Banks, and against defendant, Mercy Villa Care Center. On appeal the district court found that plaintiff failed to establish he was entitled to damages under the provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. (1982), and therefore reversed the judgment and dismissed plaintiff's action. In this appeal Banks challenges the district court's finding and resultant judgment. We reverse and remand with direction.

The center, located in Omaha, is described by the record as a retirement home for nuns and priests. According to Banks, some of the center's "patients" were "out of staters" from Iowa, Colorado, and Missouri who were visited by persons from other states. The center employed Banks as a security guard for the period from November 25, 1978, to December 1, 1983.

Banks' primary responsibilities were to remain at the front desk to answer the telephone and to periodically check the boilers between the hours of 11 p.m. and 7 a.m. At 7 a.m. the receptionist relieved him of his telephone answering duties, and the maintenance crew took over the boiler responsibility. Nonetheless, the center required Banks to remain on its premises until 7:30 a.m.

During that last half hour Banks would eat breakfast and get coffee for himself and the receptionist. In addition, he would go outdoors to check the grounds and would stand by the door to assist the residents if needed. Most often, he would read the newspaper.

For the first 6 to 8 months Banks was paid on the basis of a 42$\frac{1}{2}$-hour workweek. Following that period of time, he was paid on the basis of a 40-hour workweek. When Banks inquired why he had to remain on the premises until 7:30, he was told that the center was required to provide him with a half-hour break for meals.

The act requires that employers subject to its provisions pay each employee engaged in commerce or in the production of goods for commerce, or who is employed in an enterprise which is engaged in commerce or in the production of goods for commerce, specified wages for all hours worked, certain of which are to be compensated at overtime rates. 29 U.S.C. §§ 206 and 207; *Tennessee Coal Co. v. Muscoda Local*, 321 U.S. 590, 64 S. Ct. 698, 88 L. Ed. 949 (1944). The act defines commerce as meaning "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). In short, commerce as used in the act means interstate commerce.

There is no proof that Banks was himself engaged in interstate commerce or in the production of goods for interstate commerce. Thus, Banks falls within the purview of the act only if the record establishes that the center was at the relevant time an enterprise engaged in interstate commerce or in the production of goods for interstate commerce.

An enterprise, as defined in 29 U.S.C. § 203(r), includes an "institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution," whether public or private, or whether for profit or not for profit. Thus, while the record is sketchy, the description of the center as a retirement home which had patients is sufficient to establish that the center was an enterprise as defined by the act. According to 29 U.S.C. § 203(s), an enterprise is "engaged in commerce" if it "has employees

engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person . . . ."

That an enterprise such as the center, which was not engaged in the production of goods, was engaged in interstate commerce is generally established by a stipulation or proof that the enterprise used, or its employees handled, goods which were manufactured, processed, or supplied by sources outside the state. *Marshall v. Brunner*, 668 F.2d 748 (3d Cir. 1982); *Marshall v. Child Care Center*, 23 Wage & Hour Cas. 477 (BNA 1977); *Brennan v. State of Iowa*, 494 F.2d 100 (8th Cir. 1974); *Shultz v. Union Trust Bank of St. Petersburg*, 297 F. Supp. 1274 (M.D. Fla. 1969).

However, the U.S. Supreme Court has consistently construed the act liberally so as to apply it to the furthest reaches consistent with congressional direction in recognition of the fact that broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency. *Tony & Susan Alamo Foundation v. Sec'y of Labor*, 471 U.S. 290, 105 S. Ct. 1953, 85 L. Ed. 2d 278 (1985); *Mitchell v. Lublin, McGaughy & Asso.*, 358 U.S. 207, 79 S. Ct. 260, 3 L. Ed. 2d 243 (1959). In keeping with that principle, *Marshall v. Sideris*, 524 F. Supp. 521 (D. Neb. 1981), concluded that an enterprise which operated a number of hotels was engaged in interstate commerce because it provided accommodations to transient guests. Similarly, *Wirtz v. Healy*, 227 F. Supp. 123 (N.D. Ill. 1964), ruled that employees of a travel agency who, as a part of the agency's business, escorted travel tours through several states and foreign countries and ordered, purchased, received, distributed, and otherwise handled tickets, vouchers, coupons, and documents relating to transportation, living accommodations, meals, and related facilities, as well as sent and received reports and other documents, were engaged both in interstate commerce and in the production of goods for interstate commerce.

The U.S. Supreme Court, in *Atlanta Motel v. United States*, 379 U.S. 241, 85 S. Ct. 348, 13 L. Ed. 2d 258 (1964), concluded

that a motel which provided accommodations to interstate transient guests was subject to the provisions of the Civil Rights Act of 1964, which, among other things, prohibits racial discrimination in places of public accommodation affecting interstate commerce. *Hodgson v. Brookhaven General Hospital*, 436 F.2d 719 (5th Cir. 1970), *appeal after remand* 470 F.2d 729 (5th Cir. 1972), teaches us that the provisions of the Civil Rights Act of 1964 and that of the subject act are interrelated and must be harmonized. Thus, it appears that activities which would be held to affect interstate commerce for the purposes of the Civil Rights Act of 1964 should be considered, as a general matter at least, as activities which would affect interstate commerce for the purposes of the act under consideration in this case.

It is obvious to us that while an enterprise which provides a home to residents or patients who come from states other than Nebraska and receives transient interstate visitors to its residents or patients does not affect interstate commerce any more than an enterprise which purchases foodstuffs manufactured, processed, or supplied by sources outside of Nebraska, neither does the former circumstance affect interstate commerce any less than the latter. We thus conclude that the center is an enterprise engaged in interstate commerce and within the purview of the act.

Having come to that conclusion, we must determine whether Banks is entitled to compensation for the last half hour of each day he worked at the center.

It has been held that the workweek ordinarily includes all the time during which an employee is necessarily required to be on the employer's premises, on duty, or at a prescribed workplace. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946).

However, the Secretary of Labor has ruled in 29 C.F.R. § 785.19 (1986):

(a) *Bona fide meal periods.* Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30

minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. [Citations omitted.]

(b) *Where no permission to leave premises.* It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period.

In essence the center argues that Banks is not entitled to compensation for the last half hour of the days he worked because those intervals of time constituted bona fide meal periods.

However, 29 U.S.C. § 203(g) defines "employ" as "to suffer or permit to work." Thus, it has been held that work not requested but permitted is worktime and compensable. *Mumbower v. Callicott*, 526 F.2d 1183 (8th Cir. 1975); *Handler v. Thrasher*, 191 F.2d 120 (10th Cir. 1951); *Republican Pub. Co. v. American Newspaper Guild*, 172 F.2d 943 (1st Cir. 1949). No matter how much time is designated as a meal period, if an employee is not free to follow pursuits of a purely private nature or the time is spent predominantly for the employer's benefit, the designated time is not a bona fide meal period. *Glenn L. Martin Nebraska Co. v. Culkin*, 197 F.2d 981 (8th Cir. 1952); *F. W. Stock & Sons v. Thompson*, 194 F.2d 493 (6th Cir. 1952); *Blain v. General Electric Company*, 371 F. Supp. 857 (W.D. Ky. 1971).

This court has used similar reasoning in determining that certain waiting time and lunch periods were compensable under the provisions of a collective bargaining agreement and a city ordinance. *Bolan v. Boyle*, 218 Neb. 85, 352 N.W.2d 586 (1984), *dismissed on other grounds after remand* 222 Neb. 826, 387 N.W.2d 690 (1986); *North v. City of Omaha*, 215 Neb. 107, 337 N.W.2d 409 (1983). Applying the aforesaid principles without so saying, the court in *Donovan v. Grantham*, 690 F.2d 453 (5th Cir. 1982), held that the employer had a duty to

compensate service station employees who ate during slow periods but left their meals to wait on customers as such presented themselves.

While in the present case the record fails to establish the center requested that during the last half hour of his day at the center Banks assist any of the residents or check the grounds, the record does establish that the center insisted that Banks remain on the premises and that it permitted Banks to perform services which predominantly benefited the center. Those circumstances compel the conclusion that the last half hour of Banks' day at the center was not a bona fide meal period but was, instead, a period of compensable worktime.

Accordingly, the judgment of the district court is reversed and the cause remanded with the direction that judgment be entered in favor of Banks and against the center in such amount as the record supports, subject to the limitation imposed by the fact that this case was commenced in the small claims department of the Omaha Municipal Court, and for the award of a reasonable attorney fee. Plaintiff is awarded the sum of $250 under the provisions of 29 U.S.C. § 216 to apply to the services of his attorney in this court.

REVERSED AND REMANDED
WITH DIRECTION.

CAPORALE, J., dissenting.

I must respectfully dissent, for the majority, in my view, has stretched the meaning of being engaged in interstate commerce further than congressional direction, judicial precedent, or disciplined thought permits. The majority comes to the novel conclusion that people themselves can be articles of commerce, when they come from elsewhere to live in Nebraska on a permanent basis.

While it is true that the Fair Labor Standards Act is to be construed liberally, *Tony & Susan Alamo Foundation v. Sec'y of Labor*, 471 U.S. 290, 105 S. Ct. 1953, 85 L. Ed. 2d 278 (1985), it must nonetheless be applied with reason and commonsense, *Dunlop v. Ashy*, 555 F.2d 1228 (5th Cir. 1977), and consistent with congressional direction, *Brennan v. Plaza Shoe Store, Inc.*, 522 F.2d 843 (8th Cir. 1975).

The majority acknowledges that an enterprise such as the

Mercy Villa Care Center is usually found to be engaged in interstate commerce on the basis of a record which establishes that it uses, or its employees handle, goods which were manufactured, processed, or supplied by sources outside the state. The majority also acknowledges that no such record exists in this case. So far as the record tells us, the center may be an entirely self-sufficient and self-contained organization from which only intrastate telephone calls are made and which produces on its own premises all the commodities it and its residents or patients use and its employees handle; an unlikely condition to be sure, but a condition which the record does not belie and the nonexistence of which plaintiff had the burden to establish. *Warren-Bradshaw Co. v. Hall*, 317 U.S. 88, 63 S. Ct. 125, 87 L. Ed. 83 (1942).

Given that record, the majority relies on three cases to rationalize its result. It is true that the first of these, *Marshall v. Sideris*, 524 F. Supp. 521 (D. Neb. 1981), applied the act to an enterprise which operated hotels to accommodate transient guests. The focus of that case, however, was on whether the activities of the multiple owners were such as to make their combined operations a single enterprise. The case contains no analysis of what there was about the enterprise that engaged it in commerce. I am thus led to conclude that whether the enterprise was engaged in commerce was assumed and was not a contested issue. Even if the situation were otherwise, there was at least evidence that the enterprise in *Sideris* accommodated transients and the suggestion is that their movement affected commerce. The businesses in the remaining two cases relied upon by the majority, *Wirtz v. Healy*, 227 F. Supp. 123 (N.D. Ill. 1964), and *Atlanta Motel v. United States*, 379 U.S. 241, 85 S. Ct. 348, 13 L. Ed. 2d 258 (1964), involved the interstate movement of people as an integral part of the operations in question. That element does not exist in the present case. So far as the record shows, the opposite is true; that is, the center provides its residents or patients with a place to live on a permanent basis, not with a place at which to stop while they travel through Nebraska. Neither does the fact that its residents or patients receive out-of-state visitors make the movement of people an integral part of the center's operations.

It seems to me we should review the correctness of the trial court's judgment on the basis of the record which was actually made before that court, not on the basis of a record which the majority assumes could have been made.

I submit that if the record in this case truly establishes that the center is engaged in interstate commerce, then Congress has greater control, through the commerce clause of the federal Constitution, over what is done within the borders of this state than has ever been known before.

SHANAHAN, J., joins in this dissent.