VERLIN J. KREUS, APPELLANT, V. STILES SERVICE CENTER ET AL., APPELLEES.

550 N.W.2d 320

Filed July 12, 1996.   No. S-94-055.

Joseph A. Jordano, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., for appellant.

Jerome J. Ortman for appellees.

CAPORALE, FAHRNBRUCH, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.

Verlin J. Kreus brought this action pursuant to the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201 through 219 (1988 & Supp. III 1991), to recover unpaid over-

time compensation from his former employer, Stiles Service Center, and its owner, Frank T. Stiles. After both sides rested, the district court for Douglas County sustained the defendants' motion for directed verdict, holding that Kreus had failed to prove that he was entitled to any additional unpaid overtime compensation. Kreus appealed to the Nebraska Court of Appeals, and this matter was transferred to this court in order to regulate the caseloads of the appellate courts. We conclude that Kreus has presented a prima facie case for unpaid overtime compensation. In computing Kreus' unpaid overtime compensation, we determine that Kreus' regular rate of pay was $6 per hour, and subsequently $6.25 per hour, rather than the $5 per hour found by the district court. We reverse the district court's order granting the defendants' motion for directed verdict and remand the cause with directions.

## FACTUAL BACKGROUND

Prior to June 1991, Frank and Roger Stiles operated a service station in Omaha, Nebraska, known as Stiles Service Center. This business was incorporated by Frank Stiles in June 1991, and became known as TJKK, Inc., doing business as TJ's Food and Fuel.

Stiles hired Kreus as a service station attendant for Stiles Service Center in July 1990. Kreus continued in that position until August 5, 1991. There was no written contract of employment between Stiles and Kreus; all matters between the parties were discussed orally. The parties dispute the "regular wage" that Kreus received during this employment, an amount which is correspondingly used to compute overtime income.

The defendants assert that Kreus was actually hired at a wage of $5 per hour, although he averaged more, while Kreus asserts that he was promised $6 per hour. Stiles admits that he told Kreus that he would "see to it that he [Kreus] averaged $6 per hour," but denies that this was any promise of a regular wage. Stiles claims that he paid Kreus a base wage of $5 per hour, plus overtime at $7.50 per hour, plus any additional bonus compensation necessary in order to approximate $6 an hour on average.

It is undisputed that Kreus generally worked 99 hours every 2 weeks (45 hours one week and 54 hours the next) and that Kreus was actually paid approximately $6 per hour of work until October or November 1990, when he was given a 25-cent raise. Thereafter, the aggregate pay of Kreus divided by the number of hours worked approximated $6.25 per hour. Stiles Service Center did not keep a timeclock: employees recorded the hours they worked on makeshift timecards, which were actually blank receipts. Stiles collected the timecards, computed the hours thereon, and issued paychecks accordingly.

Employee paychecks stated neither the number of hours worked nor the regular hourly wage of the employee, although they sometimes contained notations of gross pay, withholding taxes, and federal and state income taxes. Kreus' last paycheck, for the period of August 5 through 11, 1991, consists of a paid vacation period, as Kreus actually stopped work as of August 5, 1991. During this vacation period, Stiles paid Kreus $306.25 for 49 hours, or $6.25 an hour.

After leaving his position, Kreus contacted the Nebraska Department of Labor, which conducted an informal investigation of the wage and hour practices of TJKK, Inc., formerly known as Stiles Service Center, and determined that Stiles owed Kreus $299 in unpaid overtime compensation. The department computed this amount based on employment wage records supplied by Stiles, which indicated a $5 per hour wage for Kreus. The records contained notations made by Stiles indicating the amount of regular pay (R), overtime pay (O), and additional compensation (C) paid to Kreus for each pay period. Based upon the department's recommendation, Stiles issued a check to Kreus for $299. Kreus cashed the check, but refused to sign an accompanying release.

Subsequently, Kreus filed this action for alleged unpaid overtime pay under the FLSA in state court, seeking to recover additional amounts allegedly owed. As evidence, the parties submitted some of the timeslips prepared by Kreus, Kreus' paychecks, and the employment records maintained by Stiles. At trial, the parties stipulated to coverage under the FLSA. As part of Kreus' case in chief, Kreus and Stiles testified. After Kreus rested, the defendants moved for a directed verdict,

claiming that Kreus' cashing of the $299 check for unpaid overtime compensation amounted to an accord and satisfaction. Kreus disputed this assertion, but the court reserved its ruling on the issue. While the defendants had cross-examined Kreus' witnesses, they rested without presenting further evidence. After the close of the evidence, the defendants renewed their motion for directed verdict.

The district court sustained the renewed motion for directed verdict, treating it as a motion to dismiss, and found that Kreus had failed to prove he was entitled to unpaid overtime compensation for the hours worked during his employment. However, the ruling of the district court appeared to reach the merits of the case, as the court held that Stiles did not promise a $6-per-hour wage and that any additional amounts Stiles paid to approximate this amount were excluded from the regular rate computation because they were discretionary. The court's journal entry mistakenly indicates that "[p]laintiff's renewed motion to dismiss is hereby sustained." However, the defendants moved for directed verdict and renewed that motion after the close of the evidence; therefore, it was the defendants' motion for directed verdict, rather than the plaintiff's, which the court sustained.

## ASSIGNMENTS OF ERROR

Kreus avers that the district court erred in (1) finding that Kreus failed to prove a prima facie case for overtime pay under the FLSA, (2) incorrectly applying § 207(e)(3) of the FLSA to exclude a portion of Kreus' income from the calculation of the regular rate as discretionary bonus income, (3) failing to find that the defendants violated the wage and hour practices of the FLSA as a matter of law, and (4) finding that the defendants presented sufficient evidence to refute the presumption that their wage and hour practices violated § 207(a)(1) and (e) of the FLSA.

## STANDARD OF REVIEW

A motion to dismiss in a nonjury trial is equivalent to a directed verdict in a jury trial. See *Palmtag v. Gartner Constr. Co.*, 245 Neb. 405, 513 N.W.2d 495 (1994) (stating that motion to dismiss for failure to prove prima facie case should

be treated as motion for directed verdict). In a court's review of evidence on a motion to dismiss, the nonmoving party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference which can reasonably be drawn therefrom, and where the plaintiff's evidence meets the burden of proof required and the plaintiff has made a prima facie case, the motion to dismiss should be overruled. *Knaub v. Knaub*, 245 Neb. 172, 512 N.W.2d 124 (1994). This principle applies equally to motions for directed verdict. Cf., *Cloonan v. Food-4-Less*, 247 Neb. 677, 529 N.W.2d 759 (1995) (holding that because plaintiff failed to maintain prima facie case, granting of directed verdict was appropriate); *Sell v. Mary Lanning Memorial Hosp.*, 243 Neb. 266, 498 N.W.2d 522 (1993) (holding that directed verdict should have been granted where plaintiff failed to maintain prima facie case). See, also, *Krug v. Laughlin*, 208 Neb. 367, 303 N.W.2d 311 (1981) (holding that trial court correctly overruled motion for directed verdict where plaintiff proved prima facie case).

In review of a bench trial on a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless they are clearly wrong. *Ashland State Bank v. Elkhorn Racquetball, Inc.*, 246 Neb. 411, 520 N.W.2d 189 (1994).

## ANALYSIS

### JURISDICTION

Initially, it should be noted that Nebraska state courts have jurisdiction to hear an action under the FLSA. See, *Freudenberg v. Harvey*, 364 F. Supp. 1087, 1090 (E.D. Pa. 1973) (stating that phrase "any court of competent jurisdiction" in § 216(b) of FLSA includes a state court of general jurisdiction); *Goettel v. Glenn Berry Mfrs., Inc.*, 236 F. Supp. 884 (N.D. Okla. 1964) (holding that FLSA confers concurrent jurisdiction to both state and federal courts). See, also, *Banks v. Mercy Villa Care Center*, 225 Neb. 751, 407 N.W.2d 793 (1987). Therefore, we have jurisdiction to review this matter. Furthermore, the parties stipulated at trial that Stiles Service Center and TJKK, Inc., were engaged in commerce or the production of goods for commerce for purposes of the FLSA and

that Kreus was a covered employee under the FLSA during all pertinent times.

## BACKGROUND

The FLSA provides that no employer shall employ any employee for a workweek exceeding 40 hours unless the employee is compensated for all hours beyond 40 at a rate of $1^1/_2$ times the "regular rate" at which he is employed. § 207(a)(1). Violation of this requirement entitles the employee to unpaid overtime compensation determined using the employee's regular rate plus an equal amount as liquidated damages. § 216(b).

The "regular rate" is defined under § 207(e) of the FLSA to include "all remuneration for employment paid to, or on behalf of, the employee," *except*, (1) sums paid as gifts; (2) payments for vacations, holidays, illness, reasonable travel expenses, and other similar payments to an employee which are not made as compensation for hours of employment; (3) sums paid as a result of services performed if both the fact of payment and the amount are at the sole discretion of the employer or at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly; (4) irrevocable contributions made by the employer to retirement or insurance plans; and (5) extra "premium" compensation paid for overtime work. The term "regular rate" has been further clarified in the accompanying federal regulations to mean "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed—an 'actual fact' . . . ." 29 C.F.R. § 778.108 (1991). "The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109 (1991).

Furthermore, an employee who brings an action for unpaid overtime compensation under the FLSA has the burden of proving that he performed work for which he was not compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S.

680, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946). However, where an employer has failed to keep proper and accurate records in violation of the FLSA, an employee maintains his burden of proof "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." 328 U.S. at 687. At this point, the burden of production shifts to the employer to produce evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. *Id*.

### PRIMA FACIE CASE AND LACK OF PROOF OF EXCEPTION

In the present case, it is undisputed that Stiles Service Center did not keep proper and accurate employment records as required by the FLSA. The timecards recording the employees' hours were actually blank receipts on which the employees themselves recorded their hours. Stiles Service Center maintained neither a timeclock or similar device nor independent contemporaneous records of employee hours. Therefore, the district court correctly found that only the lesser burden of showing the amount and extent of uncompensated overtime work by just and reasonable inference applied to Kreus in this case.

Furthermore, the district court correctly found that Kreus met his burden of proof and that the burden shifted to the defendants to disprove the inference of unpaid overtime compensation. Kreus introduced his timecards and paychecks, which indicated that he worked overtime hours on a regular basis, and from which a just and reasonable inference could be drawn that his "regular rate" was $6 per hour, and later $6.25 per hour. When divided by the number of hours worked, every paycheck that Kreus received represented a pay rate of either $6 per hour, or later $6.25 per hour. These facts meet the standard definition of "regular rate," i.e., total remuneration per workweek divided by the number of hours worked in that week, as set forth in the regulations enacted pursuant to the FLSA. See 29 C.F.R. § 778.109.

The burden of establishing an exception or exclusion from this standard calculation rests on the employer, and such employer must affirmatively plead and prove an exception. *Corning Glass Works v. Brennan*, 417 U.S. 188, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974); *McLaughlin v. McGee Bros. Co., Inc.*, 681 F. Supp. 1117 (W.D.N.C. 1988). In the present case, the defendants failed to both plead and prove that any amount received per hour over $5 fit within an exception to the regular rate calculation. Therefore, Kreus presented a prima facie case for overtime compensation under the FLSA, as the facts indicate that his "regular rate" was actually $6 per hour, and subsequently $6.25 per hour, rather than the $5 per hour figure used by the department to calculate overtime compensation owed. As Kreus presented a prima facie case, it was error for the district court to grant the defendants' motion for directed verdict.

After shifting the burden of proof to the employer in this case, the district court seemed to hold that any amount paid to Kreus above $5 per hour was excludable from the "regular rate" computation under 29 U.S.C. § 207(e)(3) as a discretionary bonus. In their answer to Kreus' amended petition, the defendants failed to raise any recognized exceptions to the regular rate calculation as affirmative defenses. While the defendants raised the affirmative defense of accord and satisfaction, this defense is not recognized under the FLSA. See § 207(e). Therefore, the district court erred in holding the amounts paid over $5 per hour to be excludable from the "regular rate" computation.

Furthermore, the defendants failed to establish that the amounts delineated as "bonus pay" met the requirements of a discretionary bonus under the FLSA. Under the regulations issued in conjunction with the FLSA, for a bonus to be excluded as discretionary, both the fact of payment and the amount of payment must be determined at the sole discretion of the employer. 29 C.F.R. § 778.211(b) (1991). The amount of the bonus must be determined by the employer without relation to a prior contract, agreement, or promise. *Id*. A promise in advance to pay a bonus causes the bonus to lose its discretionary character and to be included in the calculation of "reg-

ular rate." *Id*. Furthermore, the regulations specifically state "any bonus which is promised to employees upon hiring . . . would not be excluded from the regular rate . . . ." § 778.211(c). Section 778.211(b) gives the following examples of nondiscretionary bonuses, or bonuses paid pursuant to a promise:

> Thus, if an employer announces to his employees in January that he intends to pay them a bonus in June, he has thereby abandoned his discretion regarding the fact of payment by promising a bonus to his employees. . . . Similarly, an employer who promises to sales employees that they will receive a monthly bonus computed on the basis of allocating 1 cent for each item sold whenever, is his discretion, the financial condition of the firm warrants such payments, has abandoned discretion with regard to the amount of the bonus though not with regard to the fact of payment.

In the present case, Stiles admitted at trial that he told Kreus that "he would see to it that he [Kreus] averaged $6 per hour." Pursuant to the regulations, this constituted a prior agreement or promise to pay Kreus a "bonus" at a set amount, making any "bonus" amount paid nondiscretionary under the meaning of the FLSA. Consequently, the district court improperly excluded amounts over $5 per hour as discretionary bonuses.

Additionally, the amounts paid over $5 per hour do not meet the requirements of any of the other exceptions set forth in the FLSA. Again, the defendants did not affirmatively plead any other exceptions. These amounts would not qualify as excludable "gifts" under the FLSA because they were paid pursuant to an agreement between the parties, and the amount "given" was directly dependent on the amount of hours worked. Furthermore, there is no evidence the payments were for a retirement plan, for "idle" time, or for "premium pay" as defined by the FLSA. See 29 C.F.R. §§ 778.201 to 778.207, and 778.212 to 778.224 (1991). Therefore, the amounts paid over $5 per hour should not have been excluded from the regular rate calculation, and Kreus' regular rate under the FLSA was $6 per hour and $6.25 per hour for the respective peri-

ods. The trial court clearly erred when it found that the agreed rate of pay was not $6 per hour.

Kreus worked a total of 484 hours for which overtime compensation was owed. He was paid $6 of the $9 overtime rate for these hours. Thus, $1,452 was owed for his overtime hours. Subtracting the $299 in back overtime already paid, Kreus is entitled to $1,153 plus an equal amount as liquidated damages.

### JUDGMENT

The order of the district court sustaining the defendants' motion for directed verdict is reversed, and the cause is remanded with directions. We enter judgment in favor of Verlin J. Kreus in the amount of $1,153, representing unpaid overtime compensation, together with an equal amount as liquidated damages, for a total of $2,306. Pursuant to 29 U.S.C. § 216(b), we grant Kreus' motion for attorney fees in the amount of $3,000, and costs in the amount of $1,426.

REVERSED AND REMANDED WITH DIRECTIONS.

WHITE, C.J., and LANPHIER, J., not participating.