MICHAEL JANDA, APPELLEE AND CROSS-APPELLANT, V.
CITY OF OMAHA, A MUNICIPAL CORPORATION,
APPELLANT AND CROSS-APPELLEE.

580 N.W.2d 123

Filed May 26, 1998. No. A-97-180.

Herbert M. Fitle, Omaha City Attorney, and Thomas O. Mumgaard for appellant.

Thomas F. Dowd, of Dowd & Dowd, for appellee.

SIEVERS, MUES, and INBODY, Judges.

INBODY, Judge.

Michael Janda brought this action against the City of Omaha (City) pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 through 219 (1994), alleging he was entitled to overtime wages for work performed in 1993, 1994, and 1995. The Douglas County District Court awarded Janda back overtime wages for 1994 and 1995, plus taxable court costs and attorney fees. The City appeals, and Janda cross-appeals. For the reasons set forth below, we affirm in part, and in part reverse and remand with directions.

## I. STATEMENT OF FACTS

Although the district court did not make a detailed finding of fact, most facts are not in dispute. It is uncontroverted that

Janda worked the hours for which he now claims overtime compensation, hours which, if deemed to have been worked in the employ of the City, would be compensated as overtime under FLSA. The parties agree Janda performed the work at City facilities during performances sponsored by outside promoters, after his regular City workday had ended. The City admits knowing Janda was working at those hours.

At all times relevant, Janda was employed as public events engineer for the City. According to his job specification, Janda's job duties included operation and maintenance of electrical and electronic equipment, stage properties, and related City-owned facilities, and responsibility for "determining safe and proper work methods for setting up and disassembling stage properties, lighting and sound equipment, and for supervising . . . stage employees." He was also responsible for operation and maintenance of heating and cooling equipment and other mechanical equipment.

Janda's regularly scheduled working hours, as public events engineer, were from 6 a.m. to 2 p.m. or from 5:30 a.m. to 1:30 p.m., 5 days per week. When a major stage performance appeared in a City-owned facility, usually four or five times per month, Janda would work with the show's promoters and personnel to set up and operate City equipment in those facilities. Although he performed many tasks related to those performances during his regular working hours, most show performances were scheduled in the evenings, and Janda often worked at those performances after his regularly scheduled City work hours, sometimes until 2 or 3 a.m.

From 1975 through 1995, Janda also served as the business agent for the International Alliance of Theatrical Stage Employees, Local 42, a stagehands union in which he served as hiring coordinator for show promoters seeking stagehands for local performances. Janda would also work at these performances, after he had clocked out from his official City job. For his work at these performances, Janda was paid from the box office proceeds collected by the City. This was done through an independent entity with whom the City contracted to coordinate and settle expenses from performances. Originally, that entity was Ticket Services, which handled that task from 1981 through

1995, when it was succeeded by Complete Payroll Services, Inc. (Complete Payroll). Either Ticket Services or Complete Payroll would work with the promoters, keep wage and hour records, pay the City for use of the facility, pay other expenses, and issue paychecks.

A City ordinance requires each employee seeking to work at a non-City job to complete a "Request for Approval of Outside Employment or Activity." Three such forms completed by Janda were admitted into evidence: exhibits 9, 10, and 11. In exhibits 9 and 10, forms completed on June 14, 1991, and June 18, 1992, respectively, Janda requested permission to work for Ticket Services as an outside employer and listed "officer in stagehand union" as other outside employment. In exhibit 11, completed on June 22, 1994, Janda requested permission to work for Complete Payroll and again listed "officer in stagehand union" as other outside employment.

Exhibit 2, submitted without objection, is Janda's calculation of the net overtime compensation to which he would be entitled if FLSA was found to have been violated. The City stipulated to the underlying calculations. According to exhibit 2, Janda was owed $2,309.04 for 1993, $2,550.40 for 1994, and $5,300.03 for 1995, less credit for annual and sick leave time, for a total of $9,226.30.

Following a 2-day trial, the trial court made no detailed factual finding, finding simply that Janda's testimony as to the services he performed was credible and that Janda "was not employed by two separate employers during the time that he claims he is due overtime compensation from the Defendant." The trial court concluded that failing to pay Janda overtime compensation for those services was a violation of FLSA. The trial court awarded Janda the stipulated overtime compensation for 1994 and 1995, totaling $7,237.76. The court declined to award overtime compensation for 1993 or to award liquidated damages. The City timely filed this appeal, and Janda cross-appealed.

## II. ASSIGNMENTS OF ERROR

In its appeal, the City asserts that the trial court erred in finding that Janda was, for purposes of FLSA, employed by the City

during the hours for which he claims overtime compensation from the City.

In his cross-appeal, Janda asserts the trial court erred in failing to find that the City acted willfully or with reckless disregard and, accordingly, erred in failing to award him backpay for 1993, and in failing to award him liquidated damages. Janda also seeks attorney fees for his appearance before this court.

### III. STANDARD OF REVIEW

Although the district court's factual findings are to be affirmed unless they are clearly erroneous, *Kreus v. Stiles Service Ctr.*, 250 Neb. 526, 550 N.W.2d 320 (1996), the legal effect of those facts—whether the City is an employer within the meaning of FLSA—is a question of law, *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983); *Wirtz v. Barnes Grocer Company*, 398 F.2d 718 (8th Cir. 1968). When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *State on behalf of Joseph F. v. Rial*, 251 Neb. 1, 554 N.W.2d 769 (1996).

Where the record demonstrates that the decision of the trial court is correct, although such correctness is based on a different ground from that assigned by the trial court, the appellate court will affirm. *Boettcher v. Balka*, 252 Neb. 547, 567 N.W.2d 95 (1997).

### IV. ANALYSIS

#### 1. City's Appeal

FLSA requires an employer to pay a premium hourly wage rate of 1½ times the regular hourly wage when an employee works beyond the statutory maximum hours. The extra work need not be requested or demanded by the employer, so long as the employer knowingly permits it. See § 203(g) (employ defined as "to suffer or permit to work"); *Banks v. Mercy Villa Care Center*, 225 Neb. 751, 407 N.W.2d 793 (1987).

The disputed issue is which entity, for FLSA purposes, employed Janda during the hours he worked at performances at City-owned facilities after his regular working day had ended. The City argues Janda was moonlighting, working a second job for the show promoters, the stagehands union, or Ticket Services or Complete Payroll. Janda argues that reference to

those other entities merely confuses or camouflages the reality that he worked for the City at those times.

 FLSA provides simply that an employer is liable for overtime payments to "each of his [sic] employees." § 206(a). FLSA does not expressly define an employer, but the courts have construed that term broadly, finding an employment relationship " ' "where, as a matter of economic reality, the employee is dependent upon that person for their livelihood." ' " *Howard v. Malcolm*, 852 F.2d 101, 104 (4th Cir. 1988). Although courts have applied various factors in determining whether an employer-employee relationship exists, no one factor is dispositive; instead, the court must consider the " 'circumstances of the whole activity.' " *Howard*, 852 F.2d at 105 (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 67 S. Ct. 1473, 91 L. Ed. 1772 (1947). See, also, *Herr v. Heiman*, 75 F.3d 1509, 1512 (10th Cir. 1996) ("totality-of-the-circumstances approach"); *McMaster v. State of Minn.*, 819 F. Supp. 1429, 1435 (D. Minn. 1993) ("[w]here the status of employer and employee is uncertain, it is the economic reality of the relationship, and not technical concepts of employment, that control").

From the record, it is clear that neither Complete Payroll nor Ticket Services was Janda's employer. Janda testified he was never under the control or supervision of those entities. The City's public events coordinator, Stanley Benis, admitted he never considered Janda an employee of Ticket Services or Complete Payroll. So did the City's public events manager, Lawrence Lahaie:

> Q. And would you agree that Complete Payroll Services was simply a payroll processing entity?
> A. Yes, I would.
> Q. Not an employer relationship with Mr. Janda?
> A. Was not.
> Q. You would agree with that?
> A. Yes, I would.
> Q. The same would have been true with Ticket Service?
> A. Ticket Service actually was an employer of employees.
> Q. But they weren't the employer of Mr. Janda; were they?

A. They were not, no.

Although the City argues that when Janda admitted those were his employers when he described them as outside employers in the "Request for Approval of Outside Employment or Activity" forms which he submitted, Janda's uncontroverted testimony is that he described them as outside employers only because his City supervisors told him to do so.

Nor does the record establish that Janda was employed by the stagehands union while working during performances. Janda's uncontroverted testimony is that the tasks and responsibilities of those jobs were totally distinct and that he never engaged in union business during the hours for which he claims overtime compensation. Benis testified as follows:

Q. Did you understand he got paychecks from Complete Payroll Services?

A. Yes.

Q. Did you think that was for his union activities?

A. Yes, sir.

Q. What did you think the duties of a business agent to be?

. . . .

Q. It doesn't involve explaining the physical capabilities of a facility to a prospective lessee; does it?

. . . .

A. I wouldn't think so.

Q. It doesn't involve inspecting and securing the building following performances; does it?

A. No, sir.

Q. You will agree that Mr. Janda performed those functions after he clocked off the City clock; wouldn't you?

A. Time to time, yes.

Q. He wasn't doing that as a union business agent; was he?

A. No.

At the same time, the record supports the trial court's implicit factual finding that the City was Janda's employer at those times. Janda's regular City duties were structured in such a manner as to require him to work after his assigned hours to accomplish his responsibilities. Many tasks were limited to

appropriate times relative to the performances. For example, he could not supervise use of equipment at an evening performance until that performance was underway, and he could not supervise disassembly of the equipment until that performance had ended, both of which would require him to work at other than his usual early morning and afternoon hours. Lahaie, the City's public events manager, conceded as much:

Q. . . . [Y]ou were present in court when you heard substantial testimony yesterday by Mr. Janda?

A. Yes, I was.

Q. Would you disagree with any of his testimony concerning the job duties that he performed in connection with the promotions after he had clocked off the City payroll?

A. After he clocked off the City payroll, I would say that the only disagreement that I probably have is that Mr. Janda did not normally have the ultimate lock-up capacity. He did a number of times, but there were a lot of other employees that were the last employees out of the building and turned off the lights and dusted off the parking lot and left.

Q. With that exception, you wouldn't disagree with any of his other testimony concerning the nature and type of duties that he performed after he clocked out with the City?

A. I would not.

It also is clear from the evidence that the City continued to supervise Janda during the overtime hours. According to Benis, "The thing is, [Janda] had to answer to both the City and to a promoter after 2 p.m." During cross-examination, Benis further testified as follows:

Q. You did acknowledge on Direct Examination that you have, in fact, after he has clocked out supervised some of his activities?

A. Sure.

Q. That's when he was getting paid by Complete Payroll Services?

A. Yeah. I don't know who he was getting paid by. I'm not sure.

Q. You were still supervising his activities?
A. Yes.

In sum, the evidence supports the trial court's finding that Janda worked at those performances on behalf of the City. We do not disturb a district court's factual findings unless they are clearly erroneous. See *Kreus v. Stiles Service Ctr.*, 250 Neb. 526, 550 N.W.2d 320 (1996). We see no reason to disturb them here.

In applying the law to those facts, we keep in mind that FLSA is to be construed liberally in favor of coverage by FLSA. *Tony & Susan Alamo Foundation v. Sec'y of Labor*, 471 U.S. 290, 105 S. Ct. 1953, 85 L. Ed. 2d 278 (1985). See, also, *Kelley v. Alamo*, 964 F.2d 747 (8th Cir. 1992). We conclude that, on these facts, Janda's work with outside performers during after-hours performances at City facilities was, necessarily, a continuation of his official City job duties. The trial court properly ordered the City to compensate Janda at time and one-half for such work done after his regular workday was completed.

An appellate court may also affirm a trial court's decision on grounds other than those advanced by that trial court, if the result is correct. *Boettcher v. Balka*, 252 Neb. 547, 567 N.W.2d 95 (1997). We note that an employer may incur overtime liability under FLSA even where an employee performs work for a separate employer, if the interests of both employers are sufficiently entangled to create a "joint employment" relationship. See, e.g., *Falk v. Brennan*, 414 U.S. 190, 94 S. Ct. 427, 38 L. Ed. 2d 406 (1973) (FLSA contemplates there being several simultaneous employers who may be responsible for compliance with FLSA); *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983) ("[t]wo or more employers may jointly employ someone for purposes of the FLSA"). The criteria for such a finding are set out at 29 C.F.R. 791.2(a) (1997):

[I]f the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other . . .[,] all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of [FLSA]. In this event, all joint employers are responsible, both individu-

ally and jointly, for compliance with [FLSA], including the overtime provisions, with respect to the entire employment for the particular workweek.

Thus, even if the City had succeeded in establishing that Janda was separately employed by the City, Ticket Services or Complete Payroll, and the stagehands union, that would not necessarily absolve the City of overtime liability under FLSA, if Janda was deemed a joint employee.

The relevant test for joint employment is set out at 29 C.F.R. § 791.2(b):

> Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in such situations as:
>
> . . . .
>
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee . . . .

The same facts which support the trial court's implicit finding that Janda was at all times relevant a City employee would equally support a finding that his performance of those services was in the joint interest of both the City and anyone else who could be deemed Janda's employer. The City shared at least joint supervision over Janda during his work at those facilities during performances. The interests of the City and anyone using City facilities for performances in having Janda perform his tasks were significantly intertwined, sufficiently so to support a finding of joint employment for FLSA purposes. Accordingly, the City would be jointly and severally liable for overtime pay for Janda's time on those performances, regardless of Janda's formal employment relationship with any other employer.

## 2. JANDA'S CROSS-APPEAL

On cross-appeal, Janda asserts the trial court erred both in awarding him back wages over a 2-year period instead of a 3-year period and in refusing to award him liquidated damages. Although both of those claims rest on different sections of FLSA, both require a finding that the City acted with less than

good faith. In declining to award either, the trial court expressly held that the "close factual or legal situation" under which the City acted was determinative in the court's refusal to award either overtime pay for 1993 or liquidated damages.

### (a) Two- or Three-Year Period of Back Wages

 FLSA contains a 2-year statute of limitations for bringing a cause of action for violation of its provisions, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). A violation of FLSA is not willful unless the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute . . . ." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988). The result under *Richland Shoe Co.* is a presumption of a 2-year backpay judgment unless the employer is shown to have acted willfully under that standard:

> Ordinary violations of the FLSA are subject to the general 2-year statute of limitations. To obtain the benefit of the 3-year exception, the Secretary [of Labor] must prove that the employer's conduct was willful . . . .

486 U.S. at 135.

Similarly, the burden is on Janda to prove that the City's conduct was willful. Janda does not establish that the City knowingly violated FLSA, but instead urges that the City "built in an overtime requirement into [sic] Janda's job[, yet] attempted to avoid its obligation under FLSA by utilizing the facade of a payroll agent." Brief for appellee at 14-15. However, the mere fact that the City acted in a way that was later found to be in violation of FLSA does not establish that the City did so in an attempt to escape its FLSA liabilities. We agree with the district court that Janda did not meet his burden of showing that the City's conduct was willful for purposes of extending the statute of limitations.

### (b) Liquidated Damages

Section 216(b) provides that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of

their unpaid . . . overtime compensation . . . and in an additional equal amount as liquidated damages." Section 260 provides that

> if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of [FLSA] . . . the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 . . . .

▮ An employer may meet its burden of showing its good faith and reasonable belief by "demonstrating that he outrightly and candidly engaged in the conduct shown to be a violation of [FLSA] but did so under a mistaken, although reasonable, belief that the conduct was in conformity with the law." *Brock v. El Paso Natural Gas Co.*, 644 F. Supp. 1202, 1209 (W.D. Tex. 1986). The City argues it made such a showing by asserting it merely permitted Janda to work at a job he listed as outside employment at a time when the City had no reason to believe its actions were in violation of FLSA. The district court agreed with the City that its actions were appropriate given the "close factual or legal situation" that existed.

▮ However, as explained by the U.S. Court of Appeals for the Third Circuit:

> [T]he district court has discretion to award no liquidated damages, or to award an amount of liquidated damages less than the amount provided by section 216(b) of the FLSA, *if, and only if*, the employer shows that he acted in good faith and that he had reasonable grounds for believing that he was not violating the Act. *Thus, before the district court's discretion may be invoked, the employer has the "plain and substantial burden of persuading the court* by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict."

(Emphasis in original and supplied.) *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982).

The City's mere assertion that it had reasonable grounds to believe it was not violating FLSA does not rise to a level suffi-

cient to meet its " 'plain and substantial' " burden of proof. Accordingly, the trial court was without discretion as to the issue of liquidated damages, and it was reversible error not to award them. Accord *Nelson v. Master Vaccine, Inc.*, 382 N.W.2d 261 (Minn. App. 1986) (citing *Brunner, supra,* and awarding liquidated damages).

### 3. ATTORNEY FEES BEFORE THIS COURT

Section 216(b) provides that a prevailing employee "shall" be awarded reasonable attorney fees. *Kreus v. Stiles Service Ctr.*, 250 Neb. 526, 550 N.W.2d 320 (1996); *Banks v. Mercy Villa Care Center*, 225 Neb. 751, 407 N.W.2d 793 (1987). Because we have found in favor of Janda on the City's appeal, he is entitled to recover attorney fees. Therefore, upon proper application pursuant to Neb. Ct. R. of Prac. 9(F) (rev. 1996), he will be awarded attorney fees for services in connection with this appeal.

### V. CONCLUSION

Accordingly, the judgment of the district court is reversed on the issue of liquidated damages and affirmed on all other issues. The matter is remanded with directions to enter an award of liquidated damages in the amount of $7,237.76, in addition to the $7,237.76 previously awarded.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.