Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/19/2019 09:06 AM CST

Jennifer Jo Hall, now known as
Jennifer Jo Johnson, appellant,
v. Kevin James Hall, appellee.
___ N.W.2d ___

Filed February 5, 2019.    No. A-17-1328.

1. **Modification of Decree: Appeal and Error.** Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court.
2. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
3. **Child Custody: Modification of Decree: Proof.** Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. First, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. Next, the party seeking modification must prove that changing the child's custody is in the child's best interests.
4. **Modification of Decree: Words and Phrases.** A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently.
5. **Modification of Decree.** Changes in circumstances which were within the contemplation of the parties at the time of the decree are not material changes in circumstances for purposes of modifying a divorce decree.
6. **Motions to Dismiss: Directed Verdict.** A motion for directed verdict in a jury trial is equivalent to a motion to dismiss in a nonjury trial.
7. **Motions to Dismiss: Proof.** In a court's review of evidence on a motion to dismiss, the nonmoving party is entitled to have every controverted

fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn therefrom, and where the moving party's evidence meets the burden of proof required and the moving party has made a prima facie case, the motion to dismiss should be overruled.

8. **Child Support: Rules of the Supreme Court.** As a general matter, child support obligations should be set according to the provisions of the Nebraska Child Support Guidelines.

9. ____: ____. A court may deviate from the Nebraska Child Support Guidelines, but only if it specifically finds that a deviation is warranted based on the evidence.

10. ____: ____. Absent a clearly articulated justification, any deviation from the Nebraska Child Support Guidelines is an abuse of discretion.

11. **Child Support.** Child support may be based on a parent's earning capacity when a parent voluntarily leaves employment and a reduction in that parent's support obligation would seriously impair the needs of the children.

Appeal from the District Court for Nemaha County: JULIE D. SMITH, Judge. Affirmed in part, and in part reversed and remanded with directions.

Adam R. Little, of Ballew Hazen, P.C., L.L.O., for appellant.

Allen Fankhauser, of Fankhauser, Nelsen, Werts, Ziskey & Merwin, P.C., L.L.O., for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

PIRTLE, Judge.

### INTRODUCTION

Jennifer Jo Hall, now known as Jennifer Jo Johnson, appeals from the order of the Nemaha County District Court granting the complaint to modify decree filed by Kevin James Hall regarding child support and the district court's granting of a "motion for a directed verdict" which dismissed Jennifer's "[c]ounter-[c]omplaint" regarding child custody. She claims the district court erred when it found that she had not presented evidence of a material change in circumstances regarding child custody and in its calculation of child support. For the reasons

that follow, we affirm in part, and in part reverse and remand with directions.

## BACKGROUND

The parties were married and had one minor child as a result of the marriage, Cameron T. Hall, born in October 2012. The parties divorced by a decree of dissolution entered on January 21, 2016. Kevin was granted sole physical custody of Cameron with at least 150 days of parenting time reserved for Jennifer. Jennifer has since remarried.

Jennifer has worked for a hospital since the decree of dissolution was entered. At the time of the decree, she earned $21 per hour and worked a schedule that was composed of three 12-hour shifts each week on a 3-week rotation with 2 of those weeks consisting of overnight shifts and 1 week consisting of day shifts. At the time of the trial on the complaint and counter-complaint, Jennifer had gained seniority in her position, allowing her more flexibility in choosing her shifts. She now has a husband and two nearby friends who are able to assist her with childcare. Her wages also have increased to an average of approximately $5,452.35 per month.

Kevin was earning $3,200 a month, or approximately $18.46 per hour, at the time of the decree. Kevin now earns $17 per hour. Kevin testified that he could earn up to $22 per hour if he commuted to Omaha or Lincoln, Nebraska, but that in order to care for Cameron, he chose not to commute.

The decree called for Jennifer to have parenting time with Cameron every other week from Thursday in the morning to Sunday at 7 p.m. She would also have Cameron 1 day a week during the weeks she did not have weekend parenting time with him. Jennifer could also take 2 weeks of vacation per year with Cameron, and the parties rotated various holidays on even and odd years. However, the parties have often modified this plan to accommodate Jennifer's work schedule. Jennifer will send her work schedule to Kevin to let him know what days she will be able to have Cameron. She is also able to occasionally have

Cameron after school for a couple of hours. Jennifer testified that during the transitions between the parties, Cameron questions, resists, and is sometimes anxious about them. She also testified that the transitions have caused strained communication between her and Kevin, as well as miscommunication as to when and where Cameron should be picked up.

The district court granted a "directed verdict" in favor of Kevin with regard to modification of custody, finding that there had been no material change in circumstances which would warrant modification. In determining child support, the district court found that Kevin's reduction in income was not voluntary for the purposes of changing the child support calculations. The district court used the parties' new income levels and adjusted their deductions. In the decree for dissolution, the district court called for a deviation in the child support and used worksheet 3 of the Nebraska Child Support Guidelines to calculate the child support given the 150 days of parenting time that Jennifer would have. The district court found that a continuation of the deviation and the use of worksheet 3 was appropriate. However, the district court reduced the number of days that Jennifer was given credit for from 150 to 115. The final child support calculation changed Jennifer's payment from $350 to $451 per month. The district court found that this change was a change of more than 10 percent and, thus, constituted a material change which required modification.

## ASSIGNMENTS OF ERROR

Jennifer alleges that the district court abused its discretion in failing to find that a material change in circumstances had occurred since the decree was entered, in failing to find that it was in the child's best interests to modify the decree, and in entering a child support calculation inconsistent with the Nebraska Child Support Guidelines.

## STANDARD OF REVIEW

[1,2] Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is

reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016). An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

## ANALYSIS

*Modification of Custody.*

[3-5] Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Whilde v. Whilde*, 298 Neb. 473, 904 N.W.2d 695 (2017). First, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. *Id.* Next, the party seeking modification must prove that changing the child's custody is in the child's best interests. *Id.* A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Heistand v. Heistand*, 267 Neb. 300, 673 N.W.2d 541 (2004). Changes in circumstances which were within the contemplation of the parties at the time of the decree are not material changes in circumstances for purposes of modifying a divorce decree. *McDonald v. McDonald*, 21 Neb. App. 535, 840 N.W.2d 573 (2013), citing *Desjardins v. Desjardins*, 239 Neb. 878, 479 N.W.2d 451 (1992).

[6,7] The district court disposed of the "[c]ounter-[c]omplaint" for modification of custody by granting Kevin's oral "motion for a directed verdict" at the end of all the evidence. A motion for directed verdict in a jury trial is equivalent to a motion to dismiss in a nonjury trial. See *Kreus v. Stiles Service Ctr.*, 250 Neb. 526, 550 N.W.2d 320 (1996). This was a nonjury trial. In a court's review of evidence on

a motion to dismiss, the nonmoving party is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn therefrom, and where the moving party's evidence meets the burden of proof required and the moving party has made a prima facie case, the motion to dismiss should be overruled. See *id.* For the reasons stated below, we cannot say the district court erred in granting the motion.

First, Jennifer argues that the district court improperly excluded evidence regarding the material change in circumstances. Jennifer specifically notes that the district court sustained several objections to testimony related to the decree and the understanding each party had of the decree and that the district court did not allow testimony regarding the fitness of the parents. With regard to the objections, any error alleged is harmless error because the district court allowed Jennifer to recall the impacted witness to ask the questions that she believed were improperly excluded a second time. During the additional direct examination, Kevin had only two objections which were sustained: one for speculation on an allegedly overbroad question and one for leading the witness. As such, it is unclear what additional evidence was excluded, as Jennifer alleges, that was not later introduced in the additional direct examination.

Similarly, it is not clear how the exclusion of evidence regarding the fitness of the parents harmed Jennifer's case. Neither party had alleged that the other was an unfit parent. Jennifer testified that she thought Kevin was a good parent. This fact has not changed since the original entry of the decree, and thus, it is not a material change. As such, additional testimony as to the fitness of the parents, without some correlation to an allegation of a material change, would not be relevant to the issue at hand. Therefore, we determine that the district court did not err in excluding this evidence.

Jennifer next argues that there are three material changes in circumstances that are grounds for a modification: (1) changes

in Jennifer's work schedule, including flexibility in setting her work schedule and the availability of a stronger support system; (2) the number of transitions required in order for Jennifer to exercise her parenting time is having a negative effect on Cameron's behavior; and (3) the number of transitions and Jennifer's varying work schedule create opportunities for ongoing conflict and negatively impacts the parties' ability to communicate effectively.

The evidence shows that at the dissolution hearing in 2016, the parties had agreed to custody, visitation, and child support resulting in a parenting plan the parties provided to the court. At that time, the parties contemplated that Jennifer's schedule would require significant flexibility from the parenting plan in order to have adequate parenting time. Since the time of the decree, Jennifer has remained with the same employer, keeping a relatively similar schedule in terms of hours and shifts she must work, and she works with Kevin to schedule her parenting time. The schedule of visitation has not changed and continues as contemplated by the parties. However, Jennifer argues that now that she has seniority, she is better able to move her schedule around so that it fits her parenting time and thus would be able to have more parenting time. She concedes that this increase in seniority was foreseeable at the time of the decree, indicating that she took it into consideration when creating the parenting plan and that it is only the fact that it occurred so quickly which was not anticipated and is at issue. The implication of this line of argument is that if the gain in seniority had occurred at the expected pace, then it would not have been a material change in circumstances—even though the impact of that change, the ability to dictate a schedule, is the same whether it occurred quickly or at an expected pace. Further, although Jennifer testified that she currently has seniority and is able to make these adjustments to her schedule, the evidence of her schedule in the months prior to the trial show that she was not able to maintain the current parenting plan's scheduled visits without accommodations. As

such, it appears that Jennifer's schedule is not quite as flexible as she represented in her testimony. Thus, we cannot say that the change in seniority would constitute a material change in circumstances.

Jennifer further asserts that her friends and her new husband represent a support network that did not exist at the time of the decree. She alleges they would assist her by watching Cameron if she did need to work during her parenting time. However, Jennifer indicated that at the time the parties entered into the decree, they had specifically contemplated whether she would be able to have someone other than herself watch Cameron while she was working. This consideration is included in the parenting agreement, because Kevin has the right of first refusal to care for Cameron if Jennifer is working on her weekends. Although the parties did not contemplate the specific individuals now identified by Jennifer, it was clear that they considered and rejected allowing others to care for Cameron if they were available to do so. Therefore, the addition of these new individuals has not impacted the considerations in the decree and do not constitute a material change in circumstances.

The second alleged material change is how the transitions are impacting Cameron. Jennifer testified that Cameron often did not want to leave the parent he was with at the time. It is to be expected that children will have some difficulty with transitions. However, the number of transitions were considered at the time of the decree. The parenting plan allows for two transitions each week for the specified parenting time, as well as whatever transitions are necessary when the parties exercise their right of first refusal to care for Cameron. As such, the number of transitions and their impact on Cameron were not material changes in circumstances because the parties contemplated the number of transitions at the time of the original decree.

Finally, Jennifer alleges that the contentious communications between her and Kevin are a material change in circumstances.

Although this court has previously recognized that conflict between parties can constitute a material change in circumstances, see, *Schriner v. Schriner*, 25 Neb. App. 165, 903 N.W.2d 691 (2017), and *State on behalf of Maddox S. v. Matthew E.*, 23 Neb. App. 500, 873 N.W.2d 208 (2016), it does not appear that the alleged conflict rises to the level present in those other cases. Much of the communication revolved around the present litigation or around the activities that Cameron participated in that the parties desired to attend. As such, the evidence represents communication that either was atypical or would continue even if Jennifer's proposed parenting plan was put into action. Therefore, this conflict did not constitute a material change in circumstances.

Individually and collectively, the alleged changes do not rise to the level of a material change in circumstances. However, Jennifer also alleges that the district court failed to properly consider the best interests of the child. Because we have determined that there was no material change in circumstances, there is no need to go to this second step of the analysis. See *Whilde v. Whilde*, 298 Neb. 473, 904 N.W.2d 695 (2017). Therefore, the district court did not abuse its discretion in rejecting the complaint to modify child custody.

*Modification of Child Support.*

[8-10] As a general matter, child support obligations should be set according to the provisions of the Nebraska Child Support Guidelines. *Gress v. Gress*, 274 Neb. 686, 743 N.W.2d 67 (2007). A court may deviate from the Nebraska Child Support Guidelines, but only if it specifically finds that a deviation is warranted based on the evidence. *Id.* Absent a clearly articulated justification, any deviation from the Nebraska Child Support Guidelines is an abuse of discretion. *Id.*

Jennifer alleges that the district court erred in failing to calculate Kevin's income at a higher level, in failing to properly calculate Kevin's deduction for retirement, and in failing to use the correct division of days on worksheet 3.

[11] In determining income, the court may use earning capacity in lieu of a parent's actual, present income. See Neb. Ct. R. § 4-204 (rev. 2016). Child support may be based on a parent's earning capacity when a parent voluntarily leaves employment and a reduction in that parent's support obligation would seriously impair the needs of the children. *Claborn v. Claborn*, 267 Neb. 201, 673 N.W.2d 533 (2004). Jennifer argues that Kevin should be credited with a higher income because he could commute to Omaha or Lincoln and earn a larger income and because his present earnings were not in evidence beyond his own testimony. It is undisputed in this case that Kevin reduced his income by deciding to no longer commute to Lincoln or Omaha where he would be able to garner higher wages. However, as noted in Kevin's brief, the parties had previously agreed that Cameron would attend the public schools in Johnson, Nebraska, thus requiring Kevin to reside nearby. He lives and works a few miles away in Auburn, Nebraska. As such, using the actual income of Kevin was appropriate.

We also find the argument that Kevin's income was not in evidence to be unpersuasive. First, Kevin testified that his income was $17 per hour. Second, exhibit 14, the child support calculation prepared by Kevin and offered as an "aid to the [c]ourt," contains a copy of one of Kevin's current pay stubs which lists his income as $17 per hour. Thus, it aids us in confirming Kevin's testimony regarding his income. Finally, we would also note that both exhibit 14 and exhibit 34, Jennifer's proposed child support calculation offered as an "aid to the [c]ourt," used the same figure for Kevin's monthly income which is derived from the $17 per hour wage. Because the parties both put forward the same figure to be relied upon by the district court, we find it was sufficiently proved that Kevin's income was $17 per hour. Therefore, using $17 per hour as the basis to calculate his monthly income was appropriate.

Jennifer next argues that the district court improperly included a deduction of $117.87 per month for retirement as

part of Kevin's child support calculation. The child support guidelines allow a deduction equal to the minimum amount of contribution in a mandatory plan or a continuation of the actual amount of voluntary contributions not to exceed 4 percent of gross employment income. See Neb. Ct. R. § 4-205 (rev. 2016). The district court came to the amount of $117.87 because it is 4 percent of Kevin's gross income. Jennifer is correct in stating that there was no testimony regarding retirement deductions and that the only evidence entered was exhibit 16, Kevin's 2016 tax returns, which do not show retirement savings of the level ordered. However, the pay stub in exhibit 14 shows that Kevin was making contributions to a 401K retirement plan. Further, Jennifer and Kevin, again, each used the same number that the district court did in their proposed child support calculations. Aside from Jennifer's supplying this number to the district court to use in the calculation, there was no testimony elicited by Jennifer that this number was incorrect. As such, we cannot say that allowing Kevin a deduction of $117.87 where such amount was within the bounds dictated by the child support guidelines was inappropriate.

Finally, Jennifer argues that the district court abused its discretion by using an incorrect division of days on the child support worksheet. The original child support calculation used worksheet 3 and put the division of time as 150 days for Jennifer and 215 days for Kevin. When the district court calculated the child support for the modification, it used worksheet 3 and determined the division of time as 115 days for Jennifer and 250 days for Kevin. However, the district court found no material change in circumstances to exist warranting a change in custody or an adjustment to the division of parenting time prescribed in the original, agreed-upon parenting plan. As such, there is no basis for the district court to adjust the days attributed to each party on the child support calculation. We note that the evidence demonstrates that the parties have adhered to the original parenting plan but have also been flexible in allowing Jennifer additional time due to the differences

in the parties' work schedules. Accordingly, we find the district court abused its discretion by departing from the agreed-upon parenting time provided for in the parenting plan for purposes of calculating child support.

Because we have determined that the child support calculation did not use the original division of days, we reverse the order as to this issue only and remand the cause to the district court to recalculate the child support using the division of 150 and 215 days of parenting time. The use of the incomes and deductions in the calculation of child support is otherwise affirmed.

## CONCLUSION

We conclude the district court did not abuse its discretion in finding there had been no material change in circumstances as to warrant a change of custody or the visitation schedule in the parenting plan. We further conclude the district court did not abuse its discretion in using the parties' current income and deductions in its child support calculation. However, the district court, in its child support calculation, did abuse its discretion by altering the division of parenting days prescribed by the parenting plan. Thus, the order of the district court is affirmed in part, and in part reversed and remanded with directions to recompute child support in accordance with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.