IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

KALVODA V. KALVODA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

PATRICK KALVODA, APPELLEE,

V.

TABATHA KALVODA, NOW KNOWN AS TABATHA RICHTER, APPELLANT.

Filed June 18, 2019.    No. A-18-764.

Appeal from the District Court for Adams County: STEPHEN R. ILLINGWORTH, Judge. Reversed and remanded for further proceedings.

Steffanie J. Garner Kotik, of Kotik & McClure Law, for appellant.

John B. McDermott, of Shamberg, Wolf, McDermott & Depue, for appellee.

RIEDMANN, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Tabatha Kalvoda, now known as Tabatha Richter, appeals the order of the Adams County District Court granting Patrick Kalvoda's oral motion to dismiss her complaint to modify child custody for failure to prove a material change of circumstances. Tabatha contends that the district court erred in determining that she failed to establish a material change in circumstances and in doing so prior to hearing testimony from the parties' children. We find that the district court erred in failing to allow the minor children to testify; therefore, we reverse the court's order of modification and remand for further proceedings.

## II. STATEMENT OF FACTS

Tabatha and Patrick married and had two children: Peyton, born in 2005, and Brianna, born in 2007. In 2011, Tabatha and Patrick divorced and they were awarded joint custody of the minor

children. Following the parties' divorce, Patrick remarried and had two children with his second wife who he also divorced.

In 2016, pursuant to a modification proceeding, Patrick was awarded primary physical custody of Peyton and Brianna. Tabatha testified that this modification occurred after she moved to Lincoln and that the parties still shared joint legal custody of the children. She testified that she agreed that Patrick should retain physical custody of the children so that the children could remain in the same school.

In March 2017, Tabatha filed a complaint to modify alleging that a material change in circumstances had occurred in that (1) the minor children were not safe living with Patrick due to his excessive drinking while the children were in his care and his drinking and driving with the children which resulted in at least one car accident and (2) Patrick failed to keep her informed of the children's medical and school appointments as required by court order. The modification hearing was held in June 2018 and centered around two issues: Patrick's alleged drinking problem and alleged failure to keep Tabatha apprised of the children's appointments as he was required to do.

### 1. ALLEGATIONS CONCERNING PATRICK'S DRINKING

During the modification hearing, Tabatha adduced testimony concerning four events related to Patrick's alleged drinking: (a) a November 2016 multiple-car accident which occurred on the Interstate, (b) a November 2016 "wellness check" at Patrick's home, (c) a December 2016 single-car accident, and (d) a January 2018 incident which occurred when he was picking up his children from Tabatha's home.

### (a) November 2016 Multiple-Car Accident

In November 2016, Patrick and the children were involved in a car accident on Interstate 80 during bad weather and while tornadoes were in the area. Patrick came upon a six-car pileup and became the seventh car in the accident. Patrick and the children were transported by ambulance to a hospital to be checked out and were later released.

Patrick texted Tabatha from an ambulance about 30 to 45 minutes after the accident. Although Patrick contacted his own mother about 20 to 25 minutes after the accident in order to notify her that they would need a ride home from the hospital, he testified that he waited to contact Tabatha to make sure that the children "were okay at the time and moment so that I would be able to give any details that needed to be given." He further testified that Tabatha did not come to the hospital. There was no evidence adduced that the cause of the accident was related to Patrick's use of alcohol.

### (b) November 2016 "Wellness Check"

Patrick testified that in November 2016, police came to his home while all four of his minor children were in his care. Patrick testified that he drank one beer with supper, put the kids to bed around 8 p.m., took some NyQuil for the cold and cough he was experiencing, and went to bed around 9 p.m. At some point during the late evening, Brianna contacted Tabatha because she could not wake up Patrick. After being on the telephone for approximately 3 hours, Tabatha called the police to perform a "wellness check" which was executed at about 11 p.m. or midnight. Although

the officer was satisfied that everyone in the home was fine, Patrick's ex-wife had been contacted by Tabatha, had arrived at Patrick's home, and wanted to take their youngest child to the hospital because the child had a rash. Patrick testified that he noticed the child's "small rash" the previous day and had been treating it with Benadryl and that he did not believe the rash warranted an emergency room visit, but to avoid an argument, he let his ex-wife take their child to the emergency room. The child was diagnosed with an ear infection, prescribed antibiotics, and was returned to Patrick's home early the following morning.

### (c) December 2016 Single-Car Accident

Patrick had another car accident in December 2016 at 10:30 p.m. when he was alone driving a new vehicle down a gravel road, lost control, and slid into the guardrail of a bridge, totaling the vehicle. Patrick denied drinking on this night. He did not report the accident to police until 12 hours later and he was not ticketed for the accident.

### (d) January 2018 Incident

The January 2018 incident occurred when Patrick was picking up the minor children from Tabatha's home after a visitation. On that particular day, Patrick was picking up the children early so that he and Tabatha could discuss an issue regarding one of the children. Tabatha told Patrick that she thought that he had been drinking Captain Morgan and he said that he had been drinking the night before but not recently. Tabatha wanted to look in Patrick's car, he agreed, and Tabatha testified that she found two empty beer cans. Tabatha asked Patrick to leave for an hour and then return and he complied. When he returned to pick up the children, Tabatha had contacted the police who had arrived at Tabatha's home. Patrick submitted to a breathalyzer and was not ticketed. He was once again asked to return in about an hour, he complied, and he left later that evening with the children.

### 2. TESTIMONY REGARDING KEEPING TABATHA INFORMED

Tabatha also alleged that a material change in circumstances had occurred because Patrick failed to keep her informed of the children's medical and school appointments as required by the court. Patrick admitted that there were times that he did not notify Tabatha when the children went to the doctor but stated that he always notified her if there "was a serious issue." He further testified that Tabatha was always on the school paperwork and that she had all the same forms and e-mails that she had from the school.

Tabatha testified that, during the past school year, she kept in contact with the children's principal and teachers and was able to access the children's grades online and that she received notifications from the school if the children were late for school or absent. Tabatha further admitted that she received notification of when parent-teacher conferences were scheduled but she was unable to attend due to her work schedule, so instead she e-mailed the children's teachers. She further admitted that she did not know whether the school set up the appointment times or whether the times were set up by Patrick. Tabatha further testified that Patrick did not tell her about the cardiologist appointment that Peyton is supposed to have every 5 years.

### 3. ADDITIONAL EVIDENCE

Patrick testified that his mother or aunt transport the children to school at about 7:30 a.m. The children fix their own breakfast and get themselves ready for school. Patrick picks the children up from school at 3:30 p.m. and cooks dinner. Finally, Patrick denied that he has a drinking problem.

Tabatha testified that she believes that it is in the children's best interests for their custody to be placed with her because:

> Honestly, my children's safety is my biggest concern. I can't live with myself if he were to be . . . intoxicated, get in a vehicle and my kids would be severely injured or killed. Or even in the house, what would happen if something were to happen and he's passed out and they can't wake him up? That's my biggest concern. I can't live with myself knowing that I didn't do anything. It -- just recently he's had more and more contact with the law, whether it be accidents, anything like that. And it's just a progression.

The evidence reflected that the children had always lived in the Hastings area and that their friends, grandparents, cousins, activities, doctors, and dentists are located there. Kindy Massing, an old family friend of Tabatha, testified that Peyton and Brianna are well-behaved, well-mannered, respectful, "really good" kids. The evidence further reflected that the children are good students.

### 4. DISMISSAL OF COMPLAINT

After Patrick had concluded presenting his testimony and Tabatha indicated to the court they did not "have any further witnesses with the exception [that] we did ask the Court during pretrial . . . to interview the two minor children. . . . I believe that the Court directed for them to be here at 3:30. So we will have them here at 3:30. But at this point I would rest."

Patrick made an oral motion to dismiss Tabatha's complaint for failure to prove a material change in circumstances. In support of his motion to dismiss, Patrick's attorney argued:

> I'd ask the Court . . . to dismiss [Tabatha]'s application to change custody for the reason that under Nebraska law there has to be a showing that there's any substantial change of circumstances since the entry of the original order.
>
> And, quite frankly, Your Honor, there's been no evidence that would show that there's . . . any evidence -- evidential support to show there's been any kind of substantial change of circumstances that would warrant a change of custody.
>
> The testimony is the kids are great kids. They're doing really well. You know, there might be three instances out of the 1800 days that he's had the children that [Tabatha] questions his judgment. But it has to be more than just I'm concerned about their health or I'm concerned about . . . their well-being. There's been no evidence. So I'd just ask the Court . . . to dismiss . . . [Tabatha]'s petition at this time.

The district court then responded:

> Well . . . I've been sitting here thinking that myself. Because there has to be a material change in circumstances. Kids are doing well in school. Really good grades. They have more family support system here than [Tabatha] has in Lincoln. She had suspicions on the

- 4 -

January incident where the police were called, gave him a breathalyzer. Didn't arrest him, didn't follow up or do anything about it. The wellness check in 2016, officer comes to the house, finds nothing wrong, leaves. The now ex-wife of [Patrick]'s other marriage comes and get the child, takes the child to the ER for an earache.

[W]hat are the material change in circumstances?

Tabatha's counsel responded to the court:

Your Honor, I do believe that Brianna, which the Court had indicated that she needs to be here at 3:30 is a very material witness.

[W]e have to show that there's a material change in circumstance. I do believe that with the testimony of her we can show that. And that based on the information that she's able to give, that it would call into question the fitness of [Patrick].

[Tabatha] has indicated that there was the one time in January that she had a concern. She called the police. The police came. They . . . did not take the kids. There was a four-hour time period . . . from the time that he showed up at her house until he actually left with the kids. There were four hours. I indicated that he did not have any alcohol during, approximately 12 hours before that. However, I do believe that the indication is that after he met with the police, he still left for a while . . . before he left with the kids, he was asked by the police and by [Tabatha] to leave the kids for a couple more hours. And that's 12 hours after he has indicated that he quit drinking. So I believe that there's question as to that.

Now . . . [Tabatha] is not with [Patrick] all the time. And so maybe on a day-to-day basis she's not aware of what he's doing, which is why I believe that Brianna is a material witness to determine what is in the best interests and what is safe . . . for the children. However, the times . . . in the 1800 days that [Tabatha has] been able to pinpoint, I believe are very concerning and raise a level of question that there's possible several other days that this is going on that [Tabatha] is not present in the home to determine or seeing him to determine whether or not he's safe to be with the kids.

The court responded:

So you're asking me to speculate because of an accident that got reported to the police the next day? Speculate . . . because there was a home visit . . . and an officer concluded no problem? Speculate . . . because of the incident in January of 2018, there's an alcohol problem? Aren't you asking me to speculate and pull out -- all together and conclude he's got a drinking problem? Because that's the only material change of circumstances you possibly have. You've got no abuse. You've got no drug use. You've got kids doing well in school. You've got a support system here.

Tabatha also indicated she had another exhibit marked which Brianna wrote that "indicated five reasons why she was afraid of her father." Tabatha provided:

As an offer of proof I would say that one of those would indicate that he drinks too much. I believe that at this point in time it is important for the Court to at least hear what [Brianna] has to say; at least hear what Peyton has to say. I understand that . . . the Court

is not going to take into consideration specifically and say if they want -- if they say they want to go live with their mom that that's what's going to happen. And [Tabatha] understands that that's not what's going to happen if they come in and say that. And, frankly, we don't know what they're going to say about who they want to live with. But I believe that hearing from them and hearing what their concerns are in both homes is a very important consideration at this time.

The court did not allow the minor children to testify and the district court found that Tabatha had failed to establish a material and substantial change in circumstances meriting a change of custody, granted Patrick's motion, and dismissed Tabatha's complaint to modify. Tabatha has timely appealed to this court.

## III. ASSIGNMENT OF ERROR

Tabatha contends that the district court erred in sustaining Patrick's oral motion to dismiss her complaint to modify custody for failure to prove a material change in circumstances and in doing so prior to hearing the children's testimony.

## IV. STANDARD OF REVIEW

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court. *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016); *Hall v. Hall*, 26 Neb. App. 877, 924 N.W.2d 733 (2019). An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015); *Hall v. Hall*, *supra*.

## V. ANALYSIS

Tabatha contends that the district court erred in sustaining Patrick's oral motion to dismiss her complaint to modify custody for failing to establish a material change in circumstances and in doing so prior to hearing the children's testimony.

In *Hall v. Hall*, 26 Neb. App. at 881, 924 N.W.2d at 738, we concisely set forth the guidelines concerning modification of custody:

> Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Whilde v. Whilde*, 298 Neb. 473, 904 N.W.2d 695 (2017). First, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. *Id.* Next, the party seeking modification must prove that changing the child's custody is in the child's best interests. *Id.* A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Heistand v. Heistand*, 267 Neb. 300, 673 N.W.2d 541 (2004). Changes in circumstances which were within the contemplation of the parties at the time of the decree are not material changes

in circumstances for purposes of modifying a divorce decree. *McDonald v. McDonald*, 21 Neb. App. 535, 840 N.W.2d 573 (2013), citing *Desjardins v. Desjardins*, 239 Neb. 878, 479 N.W.2d 451 (1992).

Contrary to Tabatha's allegations, the evidence adduced at the modification hearing, standing alone, did not support her claim that Patrick drank excessively while the children were in his care, or drank and drove with the children in his vehicle resulting in a car accident. Regarding the November 2016 car accident, there was no evidence supporting Tabatha's theory that Patrick had been intoxicated or that intoxication was the reason for the accident. Regarding the November 2016 wellness check, there was no evidence that Patrick had been intoxicated when an officer came to the home and determined that no problem existed. Regarding the December 2016 single car accident, there was no evidence that the cause of the accident was related to Patrick's alcohol consumption. Regarding the 2018 retrieval of his children after Tabatha's parenting time and Tabatha called the police because she suspected him of drinking before he came to pick up the children, Patrick was administered a breathalyzer by police, no ticket was issued, and Patrick was eventually allowed to leave with the children that evening.

There was nothing in the evidence regarding each of these four events to allow either the district court, or this court, to determine that alcohol was the cause of any of these events. On this record, Tabatha failed in establishing a material change of circumstances on this allegation.

Tabatha also alleged that Patrick failed to keep her up-to-date on the children's school and doctor appointments. The evidence reflected that Tabatha was notified in a timely manner of the children's school matters and Patrick testified that he always notified Tabatha if there "was a serious issue" with the children medically. This simply does not rise to a material change of circumstances.

That said, we address Tabatha's claim that the court erred in granting Patrick's motion to dismiss prior to hearing the children's testimony. Tabatha argued to the district court that there was an exhibit authored by Brianna that "indicated five reasons why she was afraid of her father" and "one of those [reasons] would indicate that he drinks too much." The court did not allow testimony by 12-year-old Peyton and 10-year-old Brianna.

When determining custody and parenting arrangements, a court shall consider the best interests of the children, which shall include consideration of "[t]he desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning." Neb. Rev. Stat. § 43-2923(6)(b) (Reissue 2016). While the wishes of a child are not controlling in the determination of custody, if a child is of sufficient age and has expressed an intelligent preference, the child's preference is entitled to consideration. *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002). In those cases where the child's preference was given significant consideration, the child was typically over 10 years old. See *id.*

Children of the parties to a marriage dissolution proceeding are not by that fact alone rendered incompetent as witnesses, but whether it is reversible error to hear their testimony depends upon the circumstances of each case. *Id.* Whether or not to allow a young child to testify in his or her parent's divorce trial is a fact-specific inquiry and depends upon the circumstances of the case. See *id.* As noted above, Nebraska case law has demonstrated that typically a child has been over 10 years of age when such testimony has been given significant consideration. See *id.*

In *Vogel v. Vogel*, 262 Neb. at 1046-47, 637 N.W.2d at 624-25, the Nebraska Supreme Court discussed its previous decision in *Beran v. Beran,* 234 Neb. 296, 450 N.W.2d 688 (1990):

In *Beran v. Beran, supra,* the mother called the parties' 15 year old daughter as a witness and the trial court did not allow her to testify. We concluded in *Beran* that the trial court had erred in its ruling. The mother had made an offer of proof as to the daughter's testimony, and the daughter was not being called to testify regarding her custodial preference but to corroborate her mother's testimony that the mother took care of the family and household duties as best she could when she was home. Such testimony was intended to counteract testimony of various witnesses presented by the father to the effect that the mother was no longer taking care of the family or that her family was no longer a priority to her. In *Beran,* we noted that although courts are rightly wary of placing minor children of a divorce proceeding in the traumatic position of testifying, the trial court should have allowed the daughter's testimony in that case. In *Beran,* the daughter was 15 years old at the time of trial and appeared to have a clear understanding of the proceedings. Her testimony had potential probative value in light of the testimony presented by the father. Although the guardian ad litem had expressed the opinion that the daughter should not testify, we found that such opinion was a broad recommendation and that there was no specific statement as to how the daughter might be detrimentally affected by testifying.

The *Vogel* court further quoted from 24 Am. Jur. 2d *Divorce and Separation* § 379 at 538 (1998), noting:

As a general matter, it has been observed that

"[a] child who is a competent witness under the general rules relating to children as witnesses is a competent witness in an action for divorce. . . .

"Although calling children to testify against one of their parents in a divorce case is distasteful and should be discouraged, a court may not prohibit a witness from testifying in a divorce case solely because the proposed witness is [a] child of the parties. Strictly speaking, however, if a child of the parties to a divorce action is called as a witness, the court is not warranted in excluding its testimony for reasons other than those warranting its exclusion generally. The rule applies with particular force where the need for calling the child to testify is imperative; public policy and private views of propriety do not justify a refusal to listen to competent testimony of young children where there is a need for such testimony. A divorce court's unwarranted refusal to permit the parties' minor children to testify may constitute reversible error."

*Vogel v. Vogel*, 262 Neb. at 1047-48, 637 N.W.2d at 625. The *Vogel* court ultimately concluded that the district court did not err in not permitting the children's testimony where the testimony would have been cumulative and, because the parties had stipulated as to the children's preferences, the district court was able to consider that factor in its determination of the custody dispute.

Here, Tabatha made a pretrial request for the children to testify and the court had directed that the children were to appear. Tabatha's counsel made clear to the court that Brianna intended to testify about Patrick's excessive alcohol use and reasons why Brianna was afraid of Patrick.

Both Brianna and Peyton were 10 years of age or older and, although we acknowledge the generally distasteful nature of calling children as witnesses in the parents' dissolution proceedings, the two children in this particular case were competent witnesses and were in a position to provide potentially probative evidence for the court's consideration. Although the evidence offered by Tabatha, standing alone, was not sufficient to establish a material change in circumstances, it did provide some evidence of alcohol use by Patrick. The children, who live with Patrick, would likely be in a better position to provide evidence on this topic and, under the circumstances, there was a need for their testimony. We therefore conclude that the trial court committed reversible error in not allowing Brianna and Peyton to testify as previously contemplated during pretrial proceedings.

## VI. CONCLUSION

Having determined that the trial court committed reversible error in not allowing the parties' minor children to testify, we reverse and remand this cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.